# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 9, 2012 Session

## BONNIE FAITH RODGERS v. THOMAS EDWARD RODGERS

**Appeal from the Circuit Court for Hamilton County**
**No. 09D2308     L. Marie Williams, Judge**

---

**No. E2011-02190-COA-R3-CV-FILED-SEPTEMBER 10, 2012**

---

This appeal arises from a divorce. Bonnie Faith Rodgers ("Wife") sued her husband, Thomas Edward Rodgers ("Husband"), for divorce in the Circuit Court for Hamilton County ("the Trial Court"), alleging inappropriate marital conduct and irreconcilable differences. Wife and Husband had been married for more than 40 years. Husband answered and counterclaimed for divorce, also alleging inappropriate marital conduct. After a trial, the Trial Court divided the marital estate and awarded Wife periodic alimony. Husband appeals, arguing that the Trial Court erred in a host of ways, including its classification and division of the marital estate and its award of periodic alimony to Wife. Husband also appeals the Trial Court's extending Wife's Order of Protection against him for an additional five years. Wife raises her own issue regarding the allocation of certain vehicles. We affirm the judgment of the Trial Court in its entirety.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Theresa L. Critchfield and Harold L. North, Jr., Chattanooga, Tennessee, for the appellant, Thomas Edward Rodgers.

Sandra J. Bott, Chattanooga, Tennessee, for the appellee, Bonnie Faith Rodgers.

# OPINION

## Background

In December 2009, Wife, a registered nurse, sued Husband, a former nuclear engineer, for divorce in the Trial Court. The parties had been married since November 1968. In her complaint, Wife alleged inappropriate marital conduct and, in the alternative, irreconcilable differences. Wife requested periodic alimony. Husband filed an answer and counterclaim in December 2009. Husband denied inappropriate marital conduct but admitted the parties had irreconcilable differences. In his counterclaim for divorce, Husband alleged, as Wife had, inappropriate marital conduct and irreconcilable differences. Various delays saw the trial in this case postponed until June 2011, when the trial was held over a period of three days. We will concentrate primarily on the testimony of Wife and Husband as being the most relevant to the issues on appeal.

Wife testified. Wife and Husband have two adult children, Eddie and Greg Rodgers, aged 37 and 32, respectively, as of trial. Wife testified that she lived at one of the parties' properties ("Lake Shadows") in Hixson, Tennessee. Wife stated that Lake Shadows was paid for completely. Regarding her health, Wife testified that she had a hysterectomy in 2009 and cancer of the cervix in 1997. Otherwise, Wife essentially is in good health. Wife testified that she has a bachelor's degree and is a registered nurse. Wife testified that most of her work throughout the marriage was part-time. Wife stated that she also had to work around the schedule of the children as she was raising them. Wife testified that Husband earned around $100,000 per year before he retired. At times, Wife held two jobs. At the time of trial, Wife was working around 16 hours per week at Consulate Health Care of Chattanooga in a managerial position, earning $31.75 per hour. Wife's gross monthly income was $2,407.69, and her total stated expenses were $3,350.55. Wife hoped to retire by February 2012. Wife had $31,000 in an IRA and $900 in a retirement account. Additionally, Wife testified that she had $285 in her bank account and could not afford to pay her attorney's fees.

Wife testified regarding her marriage to Husband. Wife stated that Husband had a violent temper and sometimes hit her. Wife testified that Husband had a gun collection. The couple had been apart since June 2009, and Husband made no contribution to Wife's support during that time.

Husband was on disability as of 2005. However, a central feature of this case involves a side business of Husband's wherein he bought, restored, and sold cars. Wife stated that Husband told her it was "none of [her] business what he was doing" with respect to buying and selling cars and equipment on the computer. While Husband and the parties'

sons were the ones predominantly engaged in the car business, Wife acknowledged that she once made notes about vehicles that Husband bought and sold.

Wife testified that Husband's sister, JoAnne Terwilliger, wanted Wife to have possession of the Rodgers family ring, an heirloom. Wife wanted her sons to have the ring to continue the tradition, and she believed the tradition would cease if Husband got the ring. Wife also testified that Ms. Terwilliger gave Wife and Husband a number of items, such as a refrigerator, because of a planned move of Ms. Terwilliger to the Chattanooga area that ended up never happening. Ms. Terwilliger, who apparently suffers from ill health, did not testify at trial. Ms. Terwilliger's deposition, in which she describes how she left the property in question with Husband in anticipation of the move, was entered into the record.

Wife had an Order of Protection taken out again Husband, which barred him from communicating with Wife or possessing firearms. Husband did call Wife a year before trial and left a message asking Wife if she really wanted to proceed with the divorce. Wife testified that Husband called her house as recently as a few days before trial.

With regard to the issue of the Order of Protection, Barbara Mireles testified to an affair she had with Husband. Ms. Mireles stated that Husband did, in fact, possess a firearm. This alleged possession occurred during the period in which the Order of Protection was in effect.

Husband testified. Husband stated that he lived in Dayton, Tennessee. With respect to his education, Husband has an undergraduate degree in nuclear science and a master's in mechanical engineering "with nuclear engineering majors." Husband related details about his work history. In 1980, Husband entered the merchant marines. During his five-year stint in the merchant marines, Husband was home only six to eight months each year. In 1985, after his ship was destroyed in Egypt, Husband decided to leave the merchant marines. From 1985 to 1989, Husband worked with the Tennessee Valley Authority, during which time he lived at home. From 1989 until 2005, when Husband retired due to heart problems, Husband spent considerable time going back and forth between Nevada and Washington, D.C. as part of his work. Husband testified that his income was $1,633 per month and his revenue shortfall was $1,309.

Husband testified regarding his buying and selling of cars. Husband stated that he had bought and sold cars to supplement his income. From May to June 2006, Husband's joint account with Wife showed deposits of $89,011. This was during a time when Husband was on disability. Husband acknowledged that he did not report his car business on the couple's joint income tax returns. Referring to some of the large deposits, Husband stated that some of the money came from selling cars and others from a line of credit. Husband

-3-

denied referring to the line of credit as a "slush fund," but was confronted with a deposition wherein he did use that term. Husband stated that he now was on bad terms with his sons, and could no longer engage in the buying and selling of cars in the manner he once did. On cross-examination, Husband acknowledged lying in a deposition when he denied being intimate with Ms. Mireles.

In August 2011, the Trial Court entered a final decree of divorce. The final decree of divorce incorporated a detailed memorandum opinion, which stated, *inter alia*:

> This cause is before the Court for the divorce of the parties. The issues before the Court are the division of assets and liabilities and an issue of alimony. It is stipulated the divorce shall be awarded to the plaintiff wife.
>
> This is a marriage of 42 years. The Wife was 65 at the time of trial and will be 66 in February. The Husband was 66 at the time of trial and will be 67 in August. The Wife has a B.S. in Nursing and has been employed as a nurse. The Husband has a Master's in Nuclear Engineering and was employed in that field throughout the marriage until he was awarded Social Security Disability because of cardiac issues.
>
> Upon hearing the testimony of the witnesses, reviewing the exhibits, and observing the demeanor of the witnesses, the Court finds Mr. Rodgers has little credibility. His testimony is contradicted by that of himself and others. He was evasive in his responses.
>
> ***
>
> There is a dispute as to Mr. Rodgers' mother's diamond engagement ring. This is a ring which Mrs. Rodgers contends was given to her by her mother-in-law. The evidence presented from Mr. Rodgers and his sister is to the contrary. The only concept in common between the testimony of the parties is the direct testimony of JoAnn Terwilliger that the ring was to be "carried on through the engagement and marriage of Rodgers son traditionally, we it had been . . . So I sent it to Tom in trust for that purpose and for that occasion." There was much testimony from Mr. Rodgers and his sister to the effect the ring was not intended to be a gift for Mrs. Rodgers although she has been wearing it for many years. Mrs. Rodgers testified the ring was sent to her by Mrs. Terwilliger who said Mr. Rodgers' mother would want her to have it. Although this conversation is hearsay and accepted for credibility purposes rather than truth, it sets the stage for the testimony of Mrs. Rodgers that she

-4-

was proud to wear the ring and would hand it to her sons. The common understanding of the witnesses and parties is that the ring was entrusted or gifted to ultimately be the property of the sons. Accordingly, the Court finds it clearly was the intention of the parties that Mrs. Rodgers had possession of the ring for the benefit of whichever son of the Rodgers can utilize it as an engagement/wedding. In the event the ring is not used for that purpose prior to the death of Mrs. Rodgers, upon her death it will be held by the Rodgers' sons for the benefit of any of their children.

\*\*\*

Also at issue is whether certain items of property which were purchased for an anticipated move of Mrs. Terwilliger to Tennessee are a part of the marital estate. It is undisputed these items were purchased for a potential residence of hers in Tennessee. The issue is whether they were gifted or abandoned to the Rodgers when she decided not to move. These items include a refrigerator and freezer which is No. 39 on the Asset and Liability Statements and Item 45 flat screen TVS. The Court finds these items were abandoned or gifted to the parties and are marital in nature. . . .

\*\*\*

Expert testimony was presented by both parties concerning the value of the two pieces of real estate which are Nos. 1 and 2 on the Asset and Liability Statements. The Court finds both experts credible and the differences in the valuation of the marital residence anticipated fluctuations based on opinion testimony. The Court finds the marital residence to have a value of $248,750.00. The disparity between expert opinions regarding the value of the lake house is greater. The Court finds the lake house to have a value of $243,000.00.

\*\*\*

The HELOC will be paid by the sale of items 18-23 [six vehicles]. In the event the HELOC is not satisfied by the sales, Husband bears the responsibility. Also, he shall continue to pay the HELOC. Any profit after sale of the vehicles not necessary to pay the HELOC will be divided equally. Because Mr. Rodgers has used, and it is anticipated will continue to use, the HELOC to make money for himself, the Court finds this division equitable, even if not equal.

The Court now must address the issue of alimony. In addressing the alimony issue, the Court is guided by the common law as well as T.C.A. 36-5-121. The Court first must analyze the need of the party seeking alimony and the ability to pay of the person who would be the payor. The incomes of the parties is reflected by their reportable income and income from earned income or Social Security are somewhat comparable. The evidence must be inspected further as the bank accounts of defendant Thomas Rodgers and his spending habits are highly inconsistent with the amount of earned income he claims. Likewise, there is evidence of significant income earned from the purchase and sale of vehicles. By utilizing the HELOC, Mr. Rodgers in 2007 generated net income in excess of $96,000.00. Additionally, while Mr. Rodgers is receiving Social Security Disability, Mrs. Rodgers still remains employed. At the time she is of an age to receive Social Security benefits, she will receive $1,269.00 per month. This is significantly less than half of what Mr. Rodgers receives from Social Security per month. It is not appropriate to set alimony on anticipated future income such as the Social Security status of Mrs. Rodgers. The analysis must take place as of the time of trial. The enumerated expenses of the parties are comparable.

***

Both parties are in a position where their traditional earning capacity is not relevant because of retirement age. However, the ability of Mr. Rodgers to earn monies buying, renovating, and selling cars must be considered. The evidence has demonstrated that ability is substantial. Mr. Rodgers' education is substantially greater than that of Mrs. Rodgers. His skills remain marketable as do those held by Mrs. Rodgers as a nurse. Further education is not a relevant factor for consideration and neither party is likely to continue in his or her traditional field. This is a marriage of in excess of 43 years duration. The ages and mental condition of the parties are comparable. Mrs. Rodgers has had physical issues in the past as has Mr. Rodgers who has been found totally disabled by the Social Security Administration. The children of this marriage are adults. The separate assets are not such as would contribute significantly to income. The division of assets and liabilities is equitable and does not yield significantly greater income to one party over the other. Both parties have made tangible and intangible contributions to the marriage. The Court finds the fault in this case to be primarily with Mr. Rodgers. The evidence established he has not been a supportive and active participant in the household at many times throughout the years and that his treatment has been abusive. He is short-tempered and unfaithful. Perhaps the factor which

-6-

contributed most to the demise of this marriage was his failure to recognize any actions of his which were not in support of the marriage. There are no tax consequences to be considered except that a portion of Mr. Rodgers' income is not taxable.

In considering all of the above factors, the Court ORDERS Mr. Rodgers to provide to Mrs. Rodgers $1,000.00 per month periodic alimony beginning the 1st day of August, 2011.

The Court finds it appropriate to secure the alimony to be awarded by the $100,000.00 life insurance policy of Mr. Rodgers and he shall name Mrs. Rodgers beneficiary on that policy. Mrs. Rodgers shall retain her life insurance and may change the beneficiary to a person or persons other than Mr. Rodgers. Mr. Rodgers is responsible for the premiums on both policies.

Before the Court also is the issue of whether or not attorney's fees should be awarded as alimony *in solido*. Mr. Rodgers shall pay $5,500.00 of Mrs. Rodgers' attorney's fees.

Mrs. Rodgers asked for the Order of Protection to be extended. The Court finds at least two violations of the Order of Protection have taken place by the conduct of Mr. Rodgers in contacting Mrs. Rodgers and also by the possession of a weapon by Mr. Rodgers. Accordingly, the Court ORDERS the Order of Protection shall be extended until and including December 13, 2016.

The costs of this cause are taxed against Mr. Rodgers for which execution may issue if necessary.

Both parties filed motions to alter or amend. In September 2011, the Trial Court ruled on the parties' motions to alter or amend. Among other things, the Trial Court gave Husband the option of keeping a pickup truck if he paid $27,500 on the HELOC debt. The Trial Court also delayed the start of Husband's alimony obligations by six months. Husband appeals.

## Discussion

We restate the issues that Husband raises on appeal as follows: 1) whether the Trial Court erred in its classification of the marital estate; 2) whether the Trial Court erred in its division of the marital estate; 3) whether the Trial Court erred in awarding Wife periodic alimony; 4) whether the Trial Court erred in awarding Wife attorney's fees; and, 5)

whether the Trial Court erred in extending the Order of Protection in favor of Wife against Husband. Though not stated exactly as such, Wife raises the following issue on appeal: whether the Trial Court erred in declining to award Wife the cars she requested, and, by requiring Wife to pay part of Husband's debt out of her share of marital property.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Also playing an important role in our review of the evidence is the Trial Court's determination that Husband "has little credibility."

We first address whether the Trial Court erred in its classification of the marital estate. Specifically, Husband argues that certain property–including a washer, dryer, stainless steel refrigerator/freezer, and, a historic wedding ring–belonged, in fact, to Husband's sister, and could not be allocated to Wife as part of the division of the marital estate. As our Supreme Court has explained:

> Tennessee is a "dual property" state because its domestic relations law recognizes both "marital property" and "separate property." *See generally* Tenn. Code Ann. § 36-4-121; *Eldridge v. Eldridge*, 137 S.W.3d 1, 12 (Tenn. Ct. App. 2002). When a married couple seeks a divorce, the "marital property" must be divided equitably between them, without regard to fault on the part of either party. Tenn. Code Ann. § 36-4-121(a)(1). "Separate property" is not part of the marital estate and is therefore not subject to division. *See Cutsinger* [*v. Cutsinger*], 917 S.W.2d [238, 241 (Tenn. Ct. App. 1995)]. Thus, it is imperative that the parties, the trial court, or both identify all of the assets possessed by the divorcing parties as either marital or separate so that a proper division can be accomplished.

*Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009).

As pertinent to the issue now before us, Tenn. Code Ann. § 36-4-121 provides that "separate property" includes: "Property acquired by a spouse at any time by gift, bequest, devise or descent; …." Tenn. Code Ann. § 36-4-121 (b)(2)(D) (Supp. 2011).

The inquiry does not end here, however, as separate property may in certain circumstances become marital. As our Supreme Court explained in *Snodgrass*:

-8-

[S]eparate property may be deemed marital by operation of law under theories of commingling or transmutation. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002).

\* \* \*

This Court addressed the related doctrines of commingling and transmutation for the first time in *Langschmidt* and adopted the following explanation:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur . . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property . . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

81 S.W.3d at 747 (quoting 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2d ed. 1987)).

*Snodgrass*, 295 S.W.3d at 247, 256.

Husband contends that the properties purchased by Ms. Terwilliger should not be subject to division in this divorce case because they were not part of the marital estate. The evidence in the record on appeal reflects that Husband's sister intended to move to the Chattanooga area but never did so. The Trial Court found that these items were either abandoned or gifted to Husband and Wife by Ms. Terwilliger and were, therefore, part of the marital estate.

With respect to the family heirloom ring, the Trial Court ordered that, should neither of the parties' sons use it for his wedding before Wife's death, it "will be held by the Rogers' sons for the benefit of any of their children." This is in keeping with the record,

wherein it is established that the ring had remained in the Rodgers families for many decades, and there was a wide agreement that this should continue. We find no reversible error in the Trial Court's classification and assignment of these various properties to Wife as we do not find that the evidence preponderates against the Trial Court's findings relevant to this issue.

We next address whether the Trial Court erred in its division of the marital estate. A review of the division of marital property in this case reveals an approximately 53% to 47% allocation of marital assets, in favor of Wife.[1] As our Supreme Court has explained:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

> * * *

> In a proceeding for divorce or legal separation, the trial court is authorized, prior to determining the support and maintenance of one party by the other, to "equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1) (2005). The trial court is empowered to do what is reasonable under the circumstances and has broad discretion in the equitable

---

[1]The parties' asset tables do not align perfectly, but are rather close.

-10-

division of the marital estate. *See Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). The division of assets is not a mechanical process and trial courts are afforded considerable discretion. *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001).

*Keyt v. Keyt*, 244 S.W.3d 321, 327-28 (Tenn. 2007) (footnote omitted).

Further, our Supreme Court has instructed:

[M]arital property must be divided equitably between the parties based on the relevant factors enumerated in Tennessee Code Annotated section 36-4-121(c) without regard to fault on the part of either party. Tenn. Code Ann. § 36-4-121(a)(1). Section 36-4-121(a)(1) requires an *equitable* division of marital property, not an *equal* division. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

*Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010).

Tennessee Code Annotated § 36-4-121 (c) provides:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) (A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the

marriage either before or after a complaint for divorce or legal separation has been filed.

      (6) The value of the separate property of each party;

      (7) The estate of each party at the time of the marriage;

      (8) The economic circumstances of each party at the time the division of property is to become effective;

      (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

      (10) The amount of social security benefits available to each spouse; and

      (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121 (c) (Supp. 2011).

Husband takes issue with three specific aspects of the division of the marital estate: 1) the allocation of the HELOC debt to Husband; 2) allegedly allocating all of the parties' marital debt to Husband; and, 3) the allocation of Husband's life insurance policy to Wife as security for the alimony.

We note initially that, in reviewing divisions of the marital estate, we fundamentally are interested in whether the overall marital property division is equitable and not whether the deposition of each individual asset or debt is equitable. Here, the division of the marital estate is relatively balanced and hews to the statutory factors. This was a long marriage. The parties enjoyed a high standard of living throughout much of the marriage, and both are now entering retirement age. We find no reversible error in the Trial Court's division of the marital estate as the evidence does not preponderate against this being an overall equitable property division.

We next address whether the Trial Court erred in awarding Wife periodic alimony. The Trial Court awarded Wife $1,000 per month in periodic alimony. Husband argues that Wife should not have been awarded alimony, or, in the alternative, that this Court should further delay the start of Husband's alimony obligations. As pertinent to this issue, our Supreme Court has explained:

For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson*, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her

support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor . . . ."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

\* \* \*

The first type of spousal support, alimony in futuro, is intended to provide support on a long-term basis until the death or remarriage of the recipient. Tenn. Code Ann. § 36–5–121(f)(1). This type of alimony can be awarded where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." *Id.* *See also Burlew*, 40 S.W.3d at 470–71; *Riggs v. Riggs*, 250 S.W.3d 453, 456 n. 2 (Tenn. Ct. App. 2007). Alimony in futuro is appropriate when

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

Tenn. Code Ann. § 36–5–121(f)(1).

> Alimony in futuro "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." *Riggs*, 250 S.W.3d at 456 n. 2. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. *Robertson*, 76 S.W.3d at 340. While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." *Kinard*, 986 S.W.2d at 234. "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle. . . ." *Id.* It is not surprising, therefore, that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." *Robertson*, 76 S.W.3d at 340.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-08 (Tenn. 2011) (footnote omitted).

Additionally, we consider a number of statutory factors in determining the nature and amount of alimony:

> (1)    The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

-14-

(2)     The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3)     The duration of the marriage;

(4)     The age and mental condition of each party;

(5)     The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)     The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)     The separate assets of each party, both real and personal, tangible and intangible;

(8)     The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)     The standard of living of the parties established during the marriage;

(10)     The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)     The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. §36-5-121 (i) (Supp. 2011).

After a careful review of the record as a whole, and in consideration of all applicable factors, we affirm the Trial Court's award of periodic alimony to Wife. This was a marriage of 42 years. Wife and Husband lived a certain high-level lifestyle. Though both worked, it is clear from the record that Husband earned more than Wife. Wife stayed at home and raised the couple's children. Wife traveled to visit Husband who often was away for months at a time. With respect to fault, the Trial Court found that Husband "has not been a supportive and active participant in the household at many times . . .," is "short-tempered and unfaithful," and "[failed] to recognize any actions of his which were not in support of the marriage." The evidence does not preponderate against these findings of the Trial Court.

One of the most significant facts relevant to the alimony issue is that of Husband's buying, restoring, and selling vehicles for a profit. The testimony reflected that Husband earned large sums of money in this endeavor in addition to drawing Social Security

disability checks. Husband contends that he is no longer capable of pursuing this hobby due to, among other things, a falling out with his sons. However, the Trial Court made a very unambiguous credibility determination regarding Husband: "[T]he Court finds Mr. Rodgers has little credibility. His testimony is contradicted by that of himself and others. He was evasive in his responses." We do not disturb the credibility determination of the Trial Court absent clear and convincing evidence to the contrary. *Hughes v. Metro. Gov't of Nashville and Davidson County,* 340 S.W.3d 352, 360 (Tenn. 2011). The evidence does not preponderate against the Trial Court's finding that Wife is at an economic disadvantage in relation to Husband. We affirm the Trial Court's award of periodic alimony to Wife.

We next address whether the Trial Court erred in awarding Wife her attorney's fees. An award of alimony in solido for payment of attorney's fees should be based on the factors set forth in Tenn. Code Ann. § 36-5-121(i), and is appropriate when the spouse seeking attorney's fees does not have adequate funds to pay his or her legal expenses. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). Conversely, a spouse with sufficient property or income to pay his or her attorney's fees is not entitled to be compensated. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000).

We believe the facts support a finding that the Wife's need is such that she requires assistance with the payment of her attorney's fees. Wife testified to her very limited savings. On the other hand, as we have discussed, Husband, as found by the Trial Court, retains the ability to earn large amounts of money through buying, restoring, and selling vehicles. We affirm the Trial Court's award of attorney's fees to Wife.

We next address whether the Trial Court erred in extending the Order of Protection in favor of Wife against Husband. With respect to modifications of an order of protection, we have stated:

> The period of time of the initial order of protection shall not exceed one year. Tenn. Code Ann. § 36-3-605(b). The trial court may modify its order of protection at any time upon motion filed by either party together with an affidavit showing a change in circumstances sufficient to warrant the modification. Tenn. Code Ann. § 36-3-608(b). While the order of protection is in effect, any court of competent jurisdiction may modify the order of protection upon proper notice to the respondent. Tenn. Code Ann. § 36-3-605(d). If, following a hearing, the respondent is found to be in violation of the order of protection, the court may extend the order of protection up to five (5) years. Tenn. Code Ann. § 36-3-605(d).

\*\*\*

The party seeking a modification or extension only needs to prove "the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence." *See* Tenn. Code Ann. § 36-3-605(b); *see also Collins v. Pharris*, No. M1999-00588-COA-R3-CV, 2001 WL 219652, at * 4 (Tenn. Ct. App. March 7, 2001).

*Wadhwani v. White*, No. M2005-02655-COA-R3-CV, 2007 WL 27329, at *3 (Tenn. Ct. App. January 3, 2007)(footnote omitted), *no appl. perm. appeal filed*.

Husband acknowledges having called Wife and leaving her a message. This action was in defiance of the Order of Protection. Furthermore, while Husband asserts he only carried a "starter pistol" to protect his dog when walking it, the Trial Court had the contrary testimony of Ms. Mireles which it could and did credit. The evidence in the record does not preponderate against the Trial Court's finding that Husband violated the Order of Protection and, after a proper hearing, the Trial Court correctly extended it.

Finally, we address Wife's issue on appeal, whether the Trial Court erred in declining to award Wife the cars she requested and requiring Wife to pay part of what Wife describes as Husband's debt out of her share of marital property. As a result of the Trial Court's order on the parties' motions to alter or amend, Wife's portion of the HELOC is $36,250.00. Wife argues that, apart from $6,600 she concedes she incurred, she should not be liable for what she regards as primarily the financial tool of Husband. As Wife herself admits, however, the Trial Court has wide latitude in the division of marital debts and assets. The evidence shows that Husband used this HELOC in his buying, restoring, and selling of cars. Clearly, this is a debt incurred during the marriage which benefitted the marriage. We affirm the judgment of the Trial Court on this issue, and, in all respects in this appeal.

Wife requests her attorney's fees on appeal, arguing that, as Wife defended the extension of her Order of Protection against Husband in this appeal, she should not bear the cost. Tenn. Code Ann. § 36-3-617 (a) (Supp. 2011). Wife also argues she should be awarded her attorney's fees as alimony in solido.

We agree with Wife that she is entitled to her attorney's fees on appeal related to her defense of the extension of the Order of Protection. As to the remainder of her attorney's fees on appeal, we note that Wife raised her own issue on appeal and was unsuccessful in that portion of this appeal. We, therefore, decline to award Wife her attorney's fees on appeal other than those related to her defense of the extension of the Order of Protection.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below and for the determination and award to Wife of reasonable attorney's fees on appeal for defending the Trial Court's extension of the Order of Protection. The costs on appeal are assessed against the Appellant, Thomas Edward Rodgers, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE